```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
JORGE TORRES,

                        Plaintiff,
                                              MEMORANDUM & ORDER
            -against-                         13-CV-6864(JS)(SIL)

UNITED SERVICE WORKERS UNION LOCAL 74
and PINELAWN CEMETARY,

                        Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:     Edward Lee Sample, II, Esq.
                   500 Bi-county Boulevard, Suite 112n
                   Farmingdale, NY 11735

For Defendants
Local 74:          Joy K. Mele, Esq.
                   Zachary Richard Harkin, Esq.
                   O'Dwyer & Bernstein LLP
                   52 Duane Street, 5th Floor
                   New York, NY 10007

Pinelawn:          Eve Irene Klein, Esq.
                   Eric William Ruden, Esq.
                   Duane Morris LLP
                   1540 Broadway
                   New York, NY 10036-4089
```

SEYBERT, District Judge:

Plaintiff Jorge Torres ("Plaintiff") commenced this action against his former employer, defendant Pinelawn Cemetery ("Pinelawn"), and his union, defendant United Service Workers Union Local 74 ("Local 74," and together with Pinelawn, "Defendants"), alleging that Pinelawn breached its collective bargaining agreement with the Union (the "CBA") by terminating his employment without just cause in violation of the Labor Management

Relations Act ("LMRA"), 29 U.S.C. § 185 et seq., and that Local 74 breached its duty of fair representation under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151, et seq. Plaintiff also asserts claims of disability discrimination and failure to accommodate under the New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW § 290 et seq. Currently pending before the Court are Defendants' motions to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entries 13, 15.) For the following reasons, Defendants' motions are DENIED.

BACKGROUND[1]

In September 2008, Plaintiff began working for Pinelawn as a seasonal "Driver/Maintenance Worker." (Compl. ¶ 20.) In or about March 2012, Plaintiff and Defendants entered into a "Last Chance Agreement" arising out of an incident that occurred during Pinelawn's 2011 holiday party. (See Ruden Decl., Docket Entry 16, Ex. A; Compl. ¶ 24.) Although the Complaint itself does not explain the circumstances surrounding the Last Chance Agreement, according to the agreement,[2] Plaintiff apparently became

---

[1] The following facts are taken from the Complaint and are presumed to be true for the purposes of this Memorandum and Order.

[2] The Court may consider the terms of the Last Chance Agreement since it is incorporated by reference in the Complaint. See Lewis Tree Serv., Inc. v. Lucent Techs., Inc., No. 99-CV-8556, 2000 WL 1277303, at *3 (S.D.N.Y. Sept. 8, 2000) ("[T]he Second

2

intoxicated at the holiday party and "was increasingly rude, insubordinate and physically threatening" to Pinelawn's superintendent, Justin Locke. (Ruden Decl. Ex. A ¶ 2.) Specifically,

> [Plaintiff] mocked Mr. Locke's financial status and management style, and told him to "step outside" with him. [Plaintiff] told Mr. Locke that the party was on "his time" and he could, therefore, speak his mind to Mr. Locke. [Plaintiff] was getting increasingly red and angry. Supervisors and co-workers did their best to restrain [Plaintiff] and keep him away from Mr. Locke. [Plaintiff] refused to listen to them, and kept attempting to engage Mr. Locke. Towards the end of the evening, [Plaintiff] was staring at Mr. Locke and nodding his head to him aggressively. [Plaintiff] then came towards Mr. Locke in a physically threatening manner and bumped into him with his drink. Several supervisors again grabbed and retrained [Plaintiff], pulling him to the side.

(Ruden Decl. Ex. A ¶ 2.) Under the Last Chance Agreement, Plaintiff would keep his job provided that, inter alia, he "refrain[ed] from abusive conduct towards Mr. Locke, his supervisors, co-workers, customers, visitors or any person having business at Pinelawn." (Ruden Decl. Ex A. ¶ 7.) Plaintiff agreed that if he failed to do so, "his employment [would] be immediately terminated," and that "neither [Local 74] nor [Plaintiff would]

---

Amended Complaint incorporates by reference the allegedly breached contract and the Court may consider the terms of that contract on a motion to dismiss.").

3

have recourse to challenge his termination through the grievance and arbitration procedure of the [CBA]." (Ruden Decl. Ex A. ¶ 7.)

On or about July 29, 2013, Plaintiff climbed a six-foot wall to trim a hedge growing on it and fell and "severely injured his lower back." (Compl. ¶ 25.) Plaintiff filed for worker's compensation and was out of work for one month. (Compl. ¶ 26.) In late August 2013, Plaintiff advised Pinelawn that he wanted to return to work. (Compl. ¶ 27.) However, Pinelawn would not allow Plaintiff to return until "he could demonstrate that he was 100% healed or had no restrictions." (Compl. ¶ 28 (internal quotation marks omitted).) On or about August 30, 2013, Plaintiff returned to work after obtaining a doctor's note, which, according to the Complaint, "authorize[ed] him to return to work without restrictions." (Compl. ¶¶ 29-30.)

Plaintiff claims that after he returned to work, Pinelawn "began a campaign of harassment and intimidation against [him] on the basis of his physical disabilities and in retaliation for taking leave." (Compl. ¶ 31.) Plaintiff specifically alleges that "[o]n his first day back to work, despite five years of working experience, . . . Pinelawn assigned Plaintiff bronze trimming, a task typically reserved for only probationary employees." (Compl. ¶ 32.) On September 5, 2013, Pinelawn's Assistant Superintendent, Louis Raico ("Raico") "summoned" Plaintiff to a meeting with Pinelawn's Supervisor, Melvin Vargas,

"to discuss Plaintiff's injury." (Compl. ¶ 33.) The next day, on September 6, 2013, Raico "informed Plaintiff he was being terminated for violating the Last Chance Agreement." (Compl. ¶ 34.)

Plaintiff alleges that Pinelawn's stated reason for terminating his employment--i.e., a violation of the Last Chance Agreement--was "false and a pretext for invidious disability discrimination." (Compl. ¶ 35.) He alleges that he was "an individual with a 'disability,' as defined by the NYSHRL," and "that Pinelawn's decision to discharge [him] was based on [his] disabilities." (Compl. ¶¶ 36-37.) He further alleges that Pinelawn "regarded [him] as suffering from a physical impairment that prevented the exercise of normal bodily functions." (Compl. ¶ 39.) Based on these allegations, Plaintiff claims that Pinelawn breached the CBA by terminating his employment without just cause and also discriminated against him on the basis of disability and failed to accommodate his disability in violation of the NYSHRL.

In September 2013, Plaintiff filed a formal grievance regarding his termination with Local 74. (Compl. ¶ 40.) On September 9, 2013, Local 74 held a grievance meeting to discuss Plaintiff's termination. (Compl. ¶ 41.) After the meeting, Plaintiff asked the Shop Steward, Mike Herron, if Local 74 would "pursue his grievance," and Herron responded, "I'll get back to you." (Compl. ¶ 42.) By letter dated September 27, 2013, Local

5

74 advised Plaintiff that, "after careful review of all the facts and circumstances relating to [the] grievance," Local 74 had decided that it would "not be proceeding further with" the grievance.[3] (Mele Decl., Docket Entry 14, Ex. B; Compl. ¶ 43.) However, the Complaint alleges that Plaintiff's grievance was meritorious and that Local 74 "failed to investigate the grievance" and "acted arbitrarily in failing to process the grievance." (Compl. ¶ 46.) Based on these allegations, Plaintiff claims that Local 74 breached its duty of fair representation. (Compl. ¶¶ 49-55.)

Pinelawn and Local 74 have separately moved to dismiss the Complaint but assert nearly identical arguments in support. (Docket Entries 13, 15.) These motions are currently pending before the Court.

## DISCUSSION

The Court will first set forth the applicable legal standard before turning to Defendants' motions more specifically.

I. <u>Legal Standard</u>

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S.

---

[3] The Court may consider the terms of the letter since it is incorporated by reference in the Complaint. See <u>Lewis</u>, 2000 WL 1277303, at *3.

6

Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); accord Harris v. Mills, 572 F.3d 66, 71–72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

The Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

7

II. Hybrid Section 301/Duty of Fair Representation Claim

As noted, Plaintiff claims that Pinelawn breached the CBA when it terminated his employment without just cause and that Local 74's failure to investigate and process Plaintiff's grievance regarding his termination constitutes a breach of its duty of fair representation. Although Plaintiff's claims against Pinelawn and Local 74 are distinct causes of action,[4] "courts have combined them to create one claim known as the hybrid § 301/duty of fair representation claim." Chiari v. N.Y. Racing Ass'n Inc., 972 F. Supp. 2d 346, 367 (E.D.N.Y. 2013) (internal quotation marks and citations omitted). Under a hybrid Section 301/duty of fair representation claim, "[t]he plaintiff may sue the union or the employer, or both, but must allege violations on the part of both." White, 237 F.3d at 178-79; accord Thomas v. Little Flower for Rehab. & Nursing, 793 F. Supp. 2d 544, 547 (E.D.N.Y. 2011) ("To prevail on a hybrid § 301/duty of fair representation claim, the Plaintiff must establish both that: (1) [the employer] breached the CBA and (2) [the union] breached the duty of fair representation." (citations omitted)). Accordingly, "'a breach of the union's duty of fair representation is essential to both of

---

[4] "Section 301 of the LMRA governs the employer's duty to honor the collective bargaining agreement, and the duty of fair representation is implied from § 9(a) of the [NLRA], 29 U.S.C. § 159(a)." White v. White Rose Food, 237 F.3d 174, 179 n.3 (2d Cir. 2001).

8

[Plaintiff's] claims.'" Chiari, 972 F. Supp. 2d at 367 (alteration in original) (quoting Stephens v. Maxx Props., No. 11-CV-2575, 2012 WL 1949339, at *2 (E.D.N.Y. May 29, 2012)).

Defendants argue that Plaintiff has failed to sufficiently allege that Local 74 breached its duty of fair representation. (Local 74's Br., Docket Entry 14-3, at 6-9; Pinelawn's Br., Docket Entry 17, at 4-6.) The Court disagrees. "To state a claim for a violation of the duty of fair representation, the plaintiff must allege that (1) the union's 'actions or inactions are either arbitrary, discriminatory, or in bad faith' and (2) 'a causal connection between the union's wrongful conduct and their injuries.'" Jiggetts v. Local 32BJ, SEIU, No. 10-CV-9082, 2011 WL 4056312, at *5 (S.D.N.Y. Aug. 10, 2011) (quoting Vaughn v. Air Line Pilots Ass'n, Int'l, 604 F.3d 703, 709 (2d Cir. 2010)), adopted by 2011 WL 4072033 (S.D.N.Y. Sept. 13, 2011). As discussed below, Plaintiff has adequately pleaded these elements.

In situations like this, where "an employee claims that his union breached its duty of fair representation by failing to grieve his complaints, courts typically look to determine whether the union's conduct was arbitrary." Moore v. Roadway Express, Inc., No. 07-CV-0977, 2008 WL 819049, at *5 (E.D.N.Y. Mar. 25, 2008) (citing Clarke v. Commc'n Workers of Am., 318 F. Supp. 2d 48, 56 (E.D.N.Y. 2004) (collecting cases)). A union acts

9

arbitrarily if it "ignores or perfunctorily presses a meritorious claim," Samuels v. Air Transport Local 504, 992 F.2d 12, 16 (2d Cir. 1993), but not where it "fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance," Cruz v. Local Union No. 3 of the Int'l Bd. of Elec. Workers, 34 F.3d 1148, 1153-54 (2d Cir. 1994). "Before deciding that a grievance lacks merit, however, the union must 'conduct at least a minimal investigation . . . .'" Llanos v. Brookdale Univ. Hosp. & Med. Ctr., No. 10-CV-1726, 2011 WL 809615, at *3 (E.D.N.Y. Mar. 2, 2011) (quoting Clergeau v. Local 1181, Amalgamated Transit Union, AFL–CIO, No. 06-CV-5567, 2008 WL 3334035, at *3 (E.D.N.Y. Aug. 10, 2008)). However, "only an egregious disregard for union members' rights constitutes a breach of the union's duty to investigate," and "tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach." Thomas, 793 F. Supp. 2d at 548 (internal quotation marks and citation omitted) (brackets omitted). Thus, to state a claim of a breach of the duty of fair representation, Plaintiff must "plausibly allege[ ] that: (1) [he] had a meritorious grievance; (2) [Local 74] was aware of the grievance; and (3) [Local 74] acted arbitrarily in failing to process the Plaintiff's grievance." Id. (citing Young v. U.S. Postal Serv., 907 F.2d 305, 308 (2d Cir. 1990)).

Here, Plaintiff claims that Pinelawn terminated his employment because of disability or perceived disability and for taking leave from work following his alleged back injury. (See Compl. ¶¶ 31-39.) Local 74 argues that "there are no facts [in the Complaint] supporting plaintiff's claim that his grievance had merit" and that he was terminated for a violation of the Last Chance Agreement. (Local 74's Br. at 7.) However, Plaintiff alleges that on his first day back from leave, he was assigned to a task "typically reserved for only probationary employees;" six days later, there was a meeting to "discuss [his] injury;" and the next day, Plaintiff was terminated. (Compl. ¶¶ 32-34.) The Court finds that these allegations, although sparse, plausibly allege that Plaintiff may have been terminated based on his back injury and in retaliation for taking leave, and not for a violation of the Last Chance Agreement. Pinelawn may very well have had a legitimate reason to terminate Plaintiff's employment based on the Last Chance Agreement, but at this stage, the Court must accept Plaintiff's allegations as true and therefore cannot dismiss the Complaint as implausible. See Moore, 2008 WL 819049, at *5.

Additionally, there is no dispute that Local 74 was aware of Plaintiff's grievance, and Plaintiff alleges that Local 74 failed to investigate it. (Compl. ¶¶ 40-47.) An allegation that Local 74 failed to investigate Plaintiff's grievance plausibly alleges a breach of the duty of fair representation. See Thomas,

11

793 F. Supp. 2d at 548 ("Insofar as a 'minimal investigation' can constitute a breach of the duty of fair representation, an allegation of a failure to perform any investigation after notice of a grievance plausibly alleges a breach of the duty of fair representation."); Passante v. N.Y. State Nurses Ass'n, No. 10-CV-0087, 2010 WL 2425953, at *3 (N.D.N.Y. June 11, 2010) ("It is enough at this juncture that [the union] allegedly failed to meet the minimum requirements in handling [the plaintiff's] grievance and that such a failure was not a tactical decision but rather an arbitrary omission--an omission that may have involved either no decision at all or a decision made in reckless disregard of [the plaintiff's rights."); Moore, 2008 WL 819049, at *5 ("Assuming, as the court must, that plaintiff made valid complaints to his shop steward and that [the union] failed to conduct even a minimal investigation, plaintiff has stated a claim that [the union] breached its duty of fair representation by failing to investigate plaintiff's grievances."). Pinelawn argues that "there is no basis to believe, nor has any been alleged" that Local 74's conduct was arbitrary because the Complaint acknowledges that Local 74 held a meeting regarding the grievance and then later informed Plaintiff that it would not pursue the grievance. (Pinelawn's Br. at 6.) However, just because Local 74 held a "meeting" does not necessarily mean that it fulfilled its duty to investigate Plaintiff's grievance and, at this stage, the Court "is required

12

to make all inferences and construe any ambiguities in favor of the Plaintiff."  Thomas, 793 F. Supp. 2d at 549.  The allegations of the Complaint are no doubt scant and the Court therefore has some concerns about the validity of Plaintiff's claim; however, the Complaint does state a claim.

The Complaint also sufficiently alleges a causal connection between Local 74's alleged conduct and Plaintiff's injury.  Local 74 incorrectly argues that the Court should dismiss the Complaint because Plaintiff "fails to demonstrate the necessary causal connection between Local 74's wrongful conduct and his injuries."  (Local 74's Br. at 9.)  However, Plaintiff need not demonstrate a causal connection because, "when deciding a Rule 12(b)(6) motion to dismiss, the Court's task is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Thomas, 793 F. Supp. 2d at 549 (internal quotation marks and citation omitted).  Plaintiff only needs to plead a causal connection, which he does.  (See, e.g., Compl. ¶ 48 ("Defendant Local 74 has caused injury to Plaintiff by denying him the benefits of the CBA, including his right to arbitrate his termination and his right to restoration . . . .").)

In sum, the Court finds that the Complaint plausibly alleges that Local 74 acted arbitrarily in the investigation of Plaintiff's grievance and that there is a causal connection between

that conduct and Plaintiff's injury.  Additionally, the Court also finds that the Complaint adequately alleges that Pinelawn breached the CBA by terminating his employment without just cause.  (Compl. ¶ 54.)  Accordingly, Defendants' motion to dismiss the Complaint for failure to plead a hybrid Section 301/duty of fair representation claim is DENIED.[5]

CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the Complaint (Docket Entries 13, 15) are DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:     September __26__, 2014
           Central Islip, NY

---

[5] Pinelawn's motion papers also request that the Court decline to exercise supplemental jurisdiction over Plaintiff's NYSHRL claims "in the event that the Court dismisses Plaintiff's federal law claims." (Pinelawn's Br. at 8.)  However, the Court has not dismissed Plaintiff's hybrid Section 301/DFR claim and Pinelawn's motion in this regard is therefore DENIED AS MOOT.  Because neither Defendant addresses the merits of Plaintiff's NYSHRL claims, the Court will not analyze whether Plaintiff has plausibly alleged such claims.